F. AND E. HOPF V. THE STATE OF TEXAS.

No. 2296.

1. **Probate of Wills—Testimony.**—None of the statutory provisions for the probate of wills forbid the introduction of other than statutory proof, and cases may arise in which it would be the duty of the court to probate a will even in opposition to the testimony of the subscribing witnesses.

2. **Same.**—If from defect of memory or corrupt purpose subscribing witnesses should be unable or unwilling to testify to the facts bearing on the due execution of a will, this ought not to be permitted to defeat the will if other testimony admissible under the ordinary rules of evidence to establish the will be introduced sufficient to satisfy the court that the testator executed the will with the formalities and under the circumstances required to make a perfect will.

3. **Same—Fact Case.**—Where one subscribing witness is shown to be beyond the jurisdiction of the court and the other by the confused condition of his memory is unable to testify to the facts necessary to the probate, resort properly can be had to other competent witnesses.

4. **Credible Witnesses.**—If parties signing as witnesses to a will are competent, credible persons when signing, any subsequent incompetency of one or both would not affect the validity of the will, though resort to other means of proving the will might become necessary.

5. **Parties to Probate Proceedings—Escheat.**—An escheat can not be declared in proceedings to probate a will. The State, therefore, is not a party, and the district or county attorney as such has no right officially to resist the probate.

6. **Practice in Probate Proceedings.**—As it might become the duty of the court to draw out all available testimony upon the probate proceedings, and no objections having been made, it was not improper for the district attorney to cross-examine witnesses produced to establish a will.

APPEAL from Dallas. Tried below before Hon. George N. Aldredge.

Appellants, F. and E. Hopf, filed their written petition in the County Court of Dallas County on the 3d day of January, 1887, for the probate of the last will of Martin Nieman, deceased. The petition is in the usual form and complies with the requirements of the law in such cases. The will attached to and made a part of said petition and sought to be probated reads as follows:

"*The State of Texas, Dallas County.*—In the name of God, amen. Being conscious of the fact of the uncertainty of life and the certainty of death, and being a man of sound and disposing mind, make and publish this my last will, revoking all others heretofore made by me.

"First. Immediately after my death I desire that from the first

moneys that is paid into the estate shall be paid for all medicines, doctors' bills, and funeral expenses, whatever they may be.

"Second.   I desire that one-half of all the property both real and personal that I die seized and possessed of shall be bequeathed unto my kindest friends, Frederick and Eliza Hopf, who reside at Cedar Hill, Dallas County, Texas.

"I further desire that the residue of my estate both real and personal, which is the other half, shall be bequeathed and go to my other friend, Peter Hemme, who resides in Dallas County, Texas, and his wife Mary Hemme I desire her to have an equal portion of said half given to her husband Peter Hemme.

"Fourth.   I desire that my step-children shall never receive one cent of my estate; and should the above named parties, to-wit, Frederick Hopf and wife and Peter Hemme and wife, agree to give and does give my step-children any part of my estate, then I desire that all the property that I die seized and possessed of to revert to the State of Texas.

"Given under my hand, and using scroll for seal, this October 15th, A. D., 1886.   I declare the two pages is my will.

"R. E. Bumpass, ⎱
"Henry Schuhl,  ⎰ Witnesses."          "M. Nieman.   [seal.]

On the 19th day of March, 1887, the county attorney of Dallas County filed in the name of the State a protest against the probation of said will.

The testimony is sufficiently given in the opinion.   The court held that the testimony was not sufficient, and entered judgment refusing the probate of the will, from which the legatees appeal.

*W. T. Strange, Leake & Henry,* and *L. F. Smith,* for appellants, F. and E. Hopf. — 1. The testimony was sufficient to authorize the probate. See Rev. Stats., arts. 1847 and 1851, pp. 274-5; Tynan v. Paschal, 27 Texas, 286; Franks v. Chapman, 64 Texas, 159; Cheatham v. Hatcher, 32 Am. Reps., 650; Will of Samuel Cottrell, 95 N. Y., 329; Will of John Meurer, 44 Wis., 393; Thornton's Exr. v. Thornton's Heirs, 6 Am. Law Reg. (N. S.), 341.

2.   Witnesses competent at the time of signing as witnesses are presumed to be credible.   See Rev. Stats., art. 4859, p. 712; Nix v. Armstrong, 38 Texas, 298; 1 Jarmon on Wills, p. 225, notes.   "The competency of an attesting witness to a will is not to be determined upon the state of facts existing at the time when the will is presented for probate, but upon those existing at the time of attestation."   Patton v. Tallman, 27 Me., 17.

3.   The statutes of the State provide a method of escheating property. It should be followed, and the State can not be heard to resist the probate of a will.   See Rev. Stats., arts. 1770 to 1788, and the amendments thereto in Acts of 1885, p. 35.

Stayton, Chief Justice.—Appellants made application to the County Court for the probate of a paper offered as the last will of Martin Nieman. This was resisted by the county attorney in behalf of the State, on four grounds, which were: 1. That Nieman was not of sound mind when the will was made. 2. That the pretended will was made under undue influence. 3. That by reason of an injury on the head received by Nieman his mind was affected before and at the time of making the will. 4. That the will was not wholly written by Nieman or attested by two credible persons above the age of fourteen years subscribing their names in the presence of the testator.

There was a hearing in the County Court and probate refused. From that an appeal was prosecuted to the District Court, where upon hearing probate was again refused, on the ground that the evidence was insufficient to authorize the probate.

The evidence was not such as to have justified the holding that Nieman had not sufficient mental capacity to execute a will at the time the paper was executed, nor was it such as to justify a holding that it was executed through undue influence.

The court below must have held that the paper was not shown to have been executed with the formalities required by the statute.

The will bore date October 15, 1886, and Martin Nieman died on the 19th November following.

The testimony offered by appellants is correctly stated in condensed form in brief of their counsel as follows:

"Appellants proved by R. E. Bumpass that he was an attorney; that on October 15, 1886, he wrote the will in question at the request of deceased; that deceased was of sound mind at the time; that he was over twenty-one years old and capable of making a will; that the deceased read the will over and said that it was as he wanted it; that deceased then signed the will and requested witness to sign it as an attesting witness, which was done in the presence of the testator; that witness was then over fourteen years of age; that witness informed Nieman how many witnesses were required to make a will, and that they must sign in his presence; that witness then left the will with Nieman; that Nieman died in Dallas County about November 19, 1886; that the will offered for probate is the one witness wrote for and saw Nieman read over and sign, and that he requested witness to sign as an attesting witness; that the next time witness saw said will was a short time after Nieman's death in November, 1886, when along with other papers, said will was found in a box where Nieman kept his private papers; that the box and will were found in a bureau drawer in the room occupied by Nieman at the time of his death, and that it then had on it the names of witness and Henry Schuhl as the attesting witnesses; that witness knows the handwriting of Schuhl and his signature to the will is genuine; that Schuhl in October and Novem-

ber, 1886, was a justice of the peace in the city of Dallas, and was over fourteen years of age, and was a competent witness; that said Schuhl was absent from Dallas County and the State of Texas at the date of trial, and his place of residence unknown; that said Nieman executed said will without any persuasion or influence from any one; that said will was never revoked so far as witness knows or believes.

"Frederick Tobion testified that he knew deceased in his lifetime; that he was also acquainted with Henry Schuhl; that both Schuhl and deceased resided in Dallas County in October, 1886; that during the latter part of said month witness was present and saw Schuhl sign the will of deceased as an attesting witness; that he signed it in the presence of deceased and at his request."

Besides this there was much and uncontroverted evidence showing that Nieman was of sound mind and that the signatures of Bumpass and Schuhl were genuine, and the only controverted fact seems to have been whether Schuhl signed the paper as an attesting witness at the request and in the presence of Nieman.

The evidence of Bumpass given before the County Court was as far as it went substantially as above stated, but was not so minute as to other facts than the signature of the paper by Nieman and by himself as a subscribing witness.

After appellant had introduced such evidence as would have required the probate of the paper, the county attorney introduced the subscribing witness Bumpass, who, while reasserting everything to which he had before testified, stated as follows:

"I first found out that Schuhl's name was to the will after I was appointed administrator. I don't know that Schuhl signed the will before Nieman's death. The name of Schuhl was not there at date of Nieman's death. It was a week or two after Nieman's death that I first saw the will; first saw it in possession of Hopf, one of legatees, in my office; Schuhl's name was on it then. My reason for saying that Schuhl's name was not signed at date of Nieman's death is that he was not present when I signed it. * * * Schuhl's name was signed after Nieman's death; Schuhl's name was not there when I first saw it, after Nieman's death; it was there when it came into my possession. I first saw the will after Nieman's death in his box in bureau among his other papers. This was the same or next day after his death. I did not look at the will there then. It was then turned over to Justice Braswell. I next saw the will when I was appointed administrator; saw it at Braswell's office; it was in Braswell's possession; I did not see then who had signed as witness or look at the will. I carried the will to my office; looked at it at my office; Henry Schuhl's name was not to it then; this was on same day I got the will from Braswell, and no one present when I looked at the will in my office. I put it in the bureau box from which I first got it and put the

box on the secretary in my office; next saw will next day in my office; Schuhl's name was to it then. Hopf came to my office and asked me about the will and I read it to him; Schuhl's name was to it then; this was next day after I got it from Braswell. The will was out of my possession after it came to my office; I sent it to Judge Burke by Hopf next day after I got it from Braswell. It came back to my office the evening of same day; Hopf brought it back. * * * I knew that Schuhl's name was put to the will the day it was sent to Judge Burke. I am administrator of estate of Nieman, deceased."

Judge Burke testified that after he was employed to assist in probating the will he sent Mr. Foree, who was employed in his office, to Bumpass for the will, and that he soon returned with the will and other papers, and that the will then bore the genuine signature of Henry Schuhl as an attesting witness.

The witness Tobion was also examined by the county attorney, and he stated that he "knew Martin Nieman and Henry Schuhl. Nieman came up to Schuhl's office one day with a big paper and Schuhl signed it for him. Nieman said it was a will. I do not know whether it was or not. He told Schuhl he wanted him to sign it. Schuhl signed it, and Nieman took it with him. This was in latter part of October."

The witness further stated that the paper presented to and signed by Schuhl resembled the paper offered in court for probate, but that he could not swear that the paper signed by Schuhl was the will of Nieman. He stated further that he did not hear distinctly what Nieman said to Schuhl about the instrument the latter signed, and that he did not hear any remark in Schuhl's office that indicated what the paper was, but he in no way qualified his statement that Nieman said that the paper the witness saw Schuhl sign was his will.

There is no controversy as to the genuineness of the signatures of Nieman, Bumpass, and Schuhl, found on the paper offered for probate; nor is there any evidence tending to show that the paper does not fully express the wish of Nieman as to the disposition of his estate.

That the paper was signed by Nieman in the presence of Bumpass, and that the latter at request of former, and in his presence, signed it as an attesting witness, under the evidence must be taken as established facts.

That Nieman was advised another attesting witness was necessary must be conceded, as must it be that Schuhl did in the presence of Nieman sign a paper declared by Nieman to be his will, which resembled the paper offered for probate.

The paper was found among the other private papers of Nieman soon after his death, and according to the testimony of Bumpass at first given it then had the genuine signature of Schuhl to it as an attesting witness. Schuhl was shown to be beyond the reach of the process of the court with reasonable certainty and his exact whereabouts unknown.

Under such a state of facts, in the absence of facts sufficient to preclude it, it ought to be presumed that Schuhl's name was placed on the paper as an attesting witness in the presence of Nieman and at his request. 1 Greenl., 38a; 2 Wharton on Ev., 889.

If the witness Tobion be entitled to credence it is difficult to resist the belief that Schuhl did sign the paper offered for probate as an attesting witness at the request of and in the presence of Nieman.

Having stated all the testimony relied upon to defeat the probate of the paper we have no disposition to comment on the contradictory and confused statements of the witness, nor upon his statement of facts which might make it to his interest to defeat the probate.

His memory is shown to be bad, and we feel authorized to believe that the many contradictory statements made on the trial and shown by the testimony of others to have been made out of court ought to be attributed to that fact. The statutes of this State provide that a will produced in court may be proved " by the written affidavit of one of the subscribing witnesses thereto, taken in open court and subscribed by such witness."

"If all the witnesses are non-residents of the county or those resident in the county are unable to attend court it may be proved by the testimony of any one or more of them taken by deposition." Rev. Stats., art. 1847.

The statute further provides the mode of proof when all the subscribing witnesses are dead, or when the will was wholly written by the testator, but none of the statutory provisions on the subject forbid the introduction of other than the statutory proof; and cases may arise in which it would be the duty of a court to probate a will even in opposition to the testimony of the subscribing witnesses.

If from defect of memory or from corrupt purpose subscribing witnesses should be unable or unwilling to testify to the facts bearing on the due execution of a will, this ought not to be permitted to defeat the will if other evidence admissible under the ordinary rules of law to establish facts be introduced sufficient to satisfy the court "that the testator executed the will with the formalities and solemnities and under the circumstances required by law to make a valid will."

Cases have arisen in which wills were admitted to probate when the positive testimony of the subscribing witnesses would have defeated this. Matter of Will of Cottrell, 95 N. Y., 329; Rugg v. Rugg, 83 N. Y., 594; January v. Thorn, 2 Barb. Ch., 59; 1 Wend. Blacks., 365; Thronton's Exrs. v. Thornton's Heirs, 6. Am. Law Reg., 341; Trustees v. Calhoun, 25 N. Y., 425; Orser v. Orser, 24 N. Y., 52; 1 Jarmon on Wills, 220; 3 Redf. on Wills, 41. Several English cases are referred to in Tarrant v. Ware, 25 N. Y., 425.

In some cases wills have been probated on proof other than that of attesting witnesses when such witnesses had no recollection of having at-

tested the will.　January v. Thorn, 2 Barb. Ch., 59, and cases referred to; Peck v. Cary, 27 N. Y., 10; Matter of Will of Kellum, 52 N. Y., 519; Brown v. Clark, 77 N. Y., 369; Clarke v. Dunnavant, 10 Leigh, 13.

We have not the benefit of the conclusions of the court below from which to ascertain on what particular ground probate was refused, except from the general statement in the judgment that the evidence was insuffi-cient.　It is suggested in the brief of counsel that the court found the witnesses to the will not to be within the meaning of the statute "cred-ible witnesses."　There is nothing in the record to show that the court so found, nor that the subscribing witnesses were not competent witnesses at the time they signed or since.　Their competency to become witnesses to the will must of course depend upon their condition at the time they became witnesses.　If they signed as subscribing witnesses under such circumstances as the statute requires to give validity to a will, and were then competent, credible witnesses, the subsequent incompetency of one or both of them would not affect the validity of the will, and it might be proved for probate by any other admissible and sufficient evidence.

So far as appears in the record of the proceedings had in the County Court no effort was made to show that Schuhl did not sign as an attesting wit-ness in the presence of and at the request of Nieman, and from the form of the issue presented those seeking probate most likely understood that the competency of the attesting witnesses or the genuineness of their sig-natures would be questioned, and did not expect that an effort would be made show that Schuhl signed the paper after the death of Nieman.

Upon the evidence offered we are of opinion the paper should have been admitted to probate, but it seems to us the facts bearing on the question of due execution of the will have not been so far developed as they may be; and as it is desirable—suspicion being thrown on the paper by one of the subscribing witnesses—to have all the evidence accessible tending to show whether the paper was executed as wills are required to be, the judgment will be reversed and the cause remanded that parties may have full opportunity to do this.

No reasons are shown which entitle the State to contest the probate, and an escheat can not be declared in a proceeding to probate a will.　It does not appear however that any objection was made to the contest nor to the introduction of evidence, and as it would have been the duty of the court if it thought necessary to draw out all the facts bearing upon the execution of the paper offered for probate known to any witness brought before it, it is unimportant that this was done by a person not entitled to make contest.　It was proper that the court should consider all legitimate evidence brought before it.

It is ordered that the judgment be reversed and the cause remanded.

*Reversed and remanded.*

Opinion December 14, 1888.