**MASSEY et al. v. ALLEN et al.***
(No. 402-3747.)

(Commission of Appeals of Texas, Section A.
March 14, 1923.)

**I. Wills ⬤▭304—Proof of signature of deceased witness and of witness with dead memory held to establish will.**

Where one of the witnesses attesting a will as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 7857, was dead, and the other had no remembrance of the transaction, proof of the signature of such witnesses was sufficient to establish the will, in the absence of fraud in the execution thereof, article 3267, subsec. 3, providing that, if none of the witnesses are living, it may be probated on proof by two witnesses of the handwriting of the subscribing witnesses and of the testator, being inapplicable, so that article 3687, thus making applicable the common law of England, applied.

**2. Wills ⬤▭302(I)—Statutes as to proof of execution of will construed.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 3267, providing for proof of a will in court, and article 3271, as to proof of the due execution of a will, provide no hard and fast rule as to the character or quantum of proof required to establish the due execution of a will, except as to its proof when the subscribing witnesses are dead; it being sufficient that the proof be to the satisfaction of the court.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Proceedings by John Allen and others to probate the will of W. J. Allen, deceased, contested by R. R. Massey and others. The will was probated in the county court, but on appeal to the district court a verdict for contestants was directed, the judgment being reversed by the Court of Civil Appeals (236 S. W. 501), and contestants bring error. Affirmed as recommended by the Commission of Appeals.

Muse & Muse, of Dallas, Simpson, Lasseter & Gentry, of Tyler, and Phillips & Townsend, of Dallas, for plaintiffs in error.

Wynne, Wynne & Gilmore, of Wills Point, Stanford & Sanders, of Canton, and Crane & Crane, of Dallas, for defendants in error.

RANDOLPH, J. The defendants in error, hereinafter styled proponents, made application to the county court of Vanzandt county to probate an instrument in writing as the last will and testament of W. J. Allen, deceased.

The attempt to probate this instrument was contested by plaintiffs in error, who will hereinafter be referred to as contestants. The county court probated the will. On appeal to the district court the jury were peremptorily instructed to return a verdict

for contestants. The Court of Civil Appeals reversed the judgment of the district court and rendered judgment in favor of plaintiffs, the effect of which was to establish the instrument as the last will and testament of W. J. Allen and to probate same. 236 S. W. 501.

We copy the following brief, but comprehensive, statement of the facts in the case from contestants' memorandum of authorities filed in this court, for the purposes of the discussion of the law as applicable to the facts in the case:

"The evidence conclusively establishes the following facts: That W. J. Allen was a man about 70 or 75 years of age at the time the instrument was executed; that he could neither read nor write; that he went to the office of T. J. McKain in Wills Point, Tex., for the purpose of having McKain write his will; that he dictated the will to McKain; that McKain wrote it at the dictation of Allen; that when it was written out McKain read it over to Allen, and then at Allen's request signed the latter's name to it and Allen made his mark; that he told Allen it was necessary to have two witnesses sign the will; that Allen went out to get the witnesses; that N. A. Matthews and R. F. Williams signed the will as witnesses; that McKain placed it in an envelope, sealed it and delivered it to Allen; that soon after Allen's death about 10 years later the instrument was found in the sealed envelope together with other papers belonging to Allen and in his possession at the time of his death. N. A. Matthews was dead at the time application to probate the will was made. The genuineness of his signature was proved by numerous witnesses. Several witnesses testified that the will was in McKain's handwriting. R. F. Williams identified his own signature as a subscribing witness to the will. The signature was also identified by several other witnesses but he had no distinct recollection of the act of attesting the will as 'a witness. He could marshal but a vague mental impression as to what occurred in connection with his act of witnessing the will. It seems he could not be positive as to where he signed the will nor as to whether Allen was present when he signed it. He was under the impression that he signed the will in McKain's office at Allen's request. Being without any definite memory as to the act of signing the will, he could neither affirm nor deny that Allen was present when he signed it, nor that any other person was present. As to this feature his memory had completely lapsed. McKain testified that as he recollected the transaction, Allen went out and brought Mr. Williams into his office at the time the latter witnessed the will. Beyond this he could say nothing as to whether or not Allen was actually present when Williams witnessed the will. He remembered even less as to whether or not Matthews was brought into his office by Allen to sign the will. As to that he stated that he could not be positive and could not say whether Allen was present or not when Matthews witnessed the will. He testified positively that he did remember that Allen brought Williams

into' his office on the occasion of Williams witnessing the will."

The objection made by contestants to the probating of the will was that, there being no proof that the alleged witnesses, Williams and Matthews, attested the will in the presence of the testator, the instrument did not constitute a valid will and could not lawfully be established as such; that, the proof of the due execution of a will being a statutory requirement, no presumption can be indulged to supply such requirement.

The proponents insist that the proof of signature of the witness Matthews, the deceased witness, establishes the will as to his signature, and that the other witness, having had a lapse of memory, having forgotten everything about the transaction except that he identifies his signature, and his signature being abundantly proven, he should be regarded as being dead, and the same rule applied as is applied to the attestation of the other witness.

Article 7857, Vernon's Civil Statutes, giving the requirements of a will, is as follows:

"*Requisites of a Will.*—Every last will and testament except where otherwise provided by law shall be in writing and signed by the testator or by some other person by his direction and in his presence, and shall, if not wholly written by himself, be attested by two or more credible witnesses above the age of fourteen years, subscribing their names thereto in the presence of the testator."

Article 3267, requiring proof of the due execution of the will, reads as follows:

"*How a Written Will Which is Produced in Court may be Proved.*—A written will produced in court may be proved:

"1. By the written affidavit of one of the subscribing witnesses thereto, taken in open court and subscribed by such witness.

"2. If all the witnesses are nonresidents of the county, or those resident of the county are unable to attend court, it may be proved by the testimony of any one or more of them taken by deposition.

"3. If none of the witnesses are living, it may be probated on proof by two witnesses of the handwriting of the subscribing witnesses thereto, and also of the testator, if he was able to write, which proof may be either by affidavit taken in open court and subscribed by the witnesses, or by deposition.

"4. If the will was wholly written by the testator it may be probated on proof by two witnesses of his handwriting, which proof may also be made by affidavit taken in open court and subscribed to by the witnesses, or by deposition."

Article 3271, requiring proof of the due execution of the will reads as follows:

"*Facts Which Must be Proved.*—Before admitting a will to probate, it must be proved to the satisfaction of the court:

"1. That the testator, at the time of executing the will, was at least twenty-one years of age, or was married, that he was of sound mind, and that he is dead.

"2. That the court has jurisdiction of his estate.

"3. That citation has been served and returned in the manner and for the length of time required by law.

"4. That the testator executed the will with the formalities and solemnities and under the circumstances required by law to make it a valid will.

"5. That such will has not been revoked by the testator."

It occurs to us that subdivision 3 of article 3267 rebuts the contention of contestants that no presumption can be indulged to establish the due execution of a will with all the formalities required by the statute. This subdivision is itself a provision for a legal presumption of such execution, for the very requirement that in the event of the death of the witnesses the due execution of the will may be proved by two witnesses testifying to the handwriting of the deceased witnesses furnishes a legal presumption of its legal execution.

The witness Matthews being dead, and the memory of the witness Williams as to the material fact of the signing in the presence of the testator having failed him, and Williams' signature being abundantly proven, the question is: Should the probate of the will be refused because there is no direct testimony that it was signed in the presence of the testator? Or, in view of the lack of proof to establish that the will was or was not so signed, should the presumption be indulged that it was signed in the presence of the testator as shown by the facts and circumstances in the case and by proof of the witnesses' signature? And does the fact that the witness' memory has failed him as to the material fact not proved, require that we accept the will as established?

[1] The making of a will by the party concerned is not usually a function to which he invites his neighbors and the community generally to participate; on the contrary, it is usually done in comparative secrecy for the reason that such testator usually makes in such will provisions which, were they known, would produce heartburnings during his lifetime. It is a common saying that "where there's a will—there are relations"; hence to the testator it is important that the transaction be comparatively secret, and he usually views such an act as the execution of his will with a degree of solemnity that befits the speaking of his last words in the disposition of his property. But to the man who is called as a witness and who is not personally interested in the disposition of the property, and who is, usually, ignorant of the contents of the instrument, such a transaction has no particular importance. His interest in the transaction being very small,

and he attaching no personal importance to it, the recollection thereof may easily fade from his memory, but his own signature he knows, and the knowledge of that signature is with him always, while the details of the transaction, in which he has only incidentally been called as an actor, may have faded from his memory, the outstanding fact with him is, when called on to identify the instrument, that his signature appears on it. This being true and there being not the slightest evidence of fraud in the execution of the will, we think that proof of the signature of the two witnesses, the one dead and the other with a dead memory, requires that we accept the instrument tendered as the last will and testament of W. J. Allen, deceased.

As sustaining this view, we will discuss and cite various statutes, decisions, and common-law rules of evidence.

[2] The statutes above set out provide no hard and fast rule as to the character or quantum of proof required to establish the due execution of a will, with the exception of the provision regulating the proof of same when the subscribing witnesses are dead. Because the statute requires certain proof to be made does not preclude the making of that proof in some manner not provided in the statutes. Article 3267, Vernon's Statutes, providing for the proof of the will in court, only furnishes a guide under the conditions stated in the statute, and using the word "may" is a recognition of other methods of proof and of other conditions under which that statute is not applicable. Article 3271 requires certain facts to be proved to the satisfaction of the court, showing, among other things, that the testator executed the will with the formality and solemnity required by the law to make it a valid will. There is, no method designated in this article of making such proof, but it is only required that it be done to the satisfaction of the court.

We do not think that the cases of Tynan v. Paschal, 27 Tex. 286, 84 Am. Dec. 619, and Hopf v. State, 72 Tex. 286, 10 S. W. 589, are decisive of the question before us, but we do think that in the general discussion of the cases before the Supreme Court, the principles laid down in those cases are, to some extent, applicable under our reasoning in this case.

In the Tynan Case, in the statement of the character of the action, the Supreme Court recognizes that the statute does not confine parties to the provision of the statute alone, for the court says:

"This is a suit to probate and establish a lost will, by parol testimony of its execution and contents. That a will lost or destroyed previous to the testator's death, if not revoked, may be thus proved, although not in direct terms authorized by the statute, is beyond dispute."

The facts in the Tynan Case, supra, show that the will was lost, and that in the effort to prove its execution the signature of only one witness was established; hence to have held that proof of its due execution had been made would have directly violated the requirement of the statute "that the signatures of the two subscribing witnesses shall be established by two witnesses.

Commenting on the method of establishing a lost will, the Supreme Court in that case further says:

"The fact that the will is not in all instances before the court where it is being probated may have been one of the reasons why the stringent rules laid down in the statute are deemed necessary. At the same time it is to be noted that, while the statute declares how a 'will may be proved,' it does not say that this may not be also done in some other way when, from the nature of the case, through the loss of the instrument, the rules *prescribed by the statute are not immediately and directly applicable.* I cannot say that this view of the question, *unless in cases to which the rules prescribed by the statute are clearly inapplicable,* meets my approval." (Emphasis ours.)

We also quote from the Hopf Case as follows:

"The statute further provides the mode of proof when all the subscribing witnesses are dead, or when the will was wholly written by the testator, but none of the statutory provisions on the subject forbid the introduction of other than the statutory proof; and cases may arise in which it would be the duty of a court to probate a will even in opposition to the testimony of the subscribing witnesses.

"If from defect of memory or from corrupt purpose subscribing witnesses should be unable or unwilling to testify to the facts bearing on the due execution of a will, this ought not to be permitted to defeat the will if other evidence admissible under the ordinary rules of law to establish facts be introduced sufficient to satisfy the court 'that the testator executed the will with the formalities and solemnities and under the circumstances required by law to make a valid will.'"

From these authorities and from those cited hereafter on the proposition that the witness Williams' memory being dead, his attestation should be given the same standing as though he himself were physically dead, we are constrained to hold that the probate of the will in controversy herein ought not to be defeated for the reason that there is no direct testimony that the witnesses signed the instrument in the presence of the testator, and that, as the facts and the circumstances surrounding the transaction, no fraud being shown, satisfy us that the will was duly executed with all the formalities and solemnities required by law, and that there being no evidence that the will was not signed in the presence of the testator, Wil-

liams' attestation being fully proven, the statute not being applicable, the legal presumption from all the facts is that the will was signed with all such formalities and solemnities.

To sustain our holding that the attestation of the witness Williams is presumed to have been made in the presence of the testator for the reason stated, and placing such attestation upon the same plane of that of a deceased witness, we cite the authorities below noted.

The case at bar not coming within the provision of the statute, and such statute not being applicable, the rule in Texas is, as prescribed by article 3687, Vernon's Civil Statutes, that—

"The common law of England as now practiced and understood shall, in its application to evidence, be followed and practiced by the courts of this state, so far as the same may not be inconsistent with this title or any other law."

There being no statute applicable to the facts in this case, and no decision of our Supreme Court or Courts of Civil Appeals to guide us in passing upon this question, we therefore refer to the common law for our rule of evidence as provided under the last-named statute. The doctrine laid down in the case of Greenough v. Greenough, 11 Pa. 489, 51 Am. Dec. 567, meets our approval as stating the rule and the reason for the rule:

"But what avails it that the man is living, if his memory is dead? If it were blotted out by paralysis, or worn out by decay, his attestation would stand for proof by a witness; but it must be immaterial how or by what means it lost its tenacity. The law of double proof would place wills on ticklish ground did it leave them to depend on the incorruptibility of attesting witnesses or on their exemption from growing infirmity. Even where they flinch from their attestation, it satisfies the demands of the statute in the first instance, and is evidence to confront them before a jury. After the testator has executed his will in conformity to the requirements of the law, it would be a mockery of his right of testamentary disposal to exclude presumptive or secondary evidence of a compliance with forms that would be received in cases of another nature."

The authorities outside of this state are apparently unanimous in holding that, if the witnesses to the will are produced in court and are forgetful of all the facts, the law in such cases will supply the defect of proof by presuming that the requirements of the statute were duly observed, unless the contrary is proved, and we cite a few of them as follows: Greenleaf on Ev. (16th Ed.) § 38a. p. 135; 1 Jones on Ev. § 50; 2 Wigmore on Ev. §§ 1511, 1512; 1 Alexander on Wills, § 511, p. 694; Beach on the Law of Wills, par. 39; 40 Cyc. par. J., p. 1273; Deupree v. Deupree, 45 Ga. 415; Barnes v. Barnes, 66 Me.

286; Eliot v. Eliot, 10 Allen (Mass.) 357; Fathcree v. Lawrence, 33 Miss. 585, 622; Chaffee v. Baptist Missionary Convention, 10 Paige (N. Y.) 85, 40 Am. Dec. 225; Clarke v. Dunnavant, 10 Leigh (Va.) 13–22; Ela v. Edwards, 16 Gray (Mass.) 91; Orser v. Orser, 24 N. Y. 51; O'Hagan's Wills, 73 Wis. 78, 40 N. W. 649, 9 Am. St. Rep. 763.

The Court of Civil Appeals, as stated above, reversed the case and rendered judgment herein. It appears that counsel had admitted in that court that all the evidence that can be obtained was before the court, and, it being further apparent that no other judgment under the facts could be rendered (Mitchum v. Railway, 107 Tex. 36, 173 S. W. 878), we recommend to the honorable Supreme Court that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.