Patsy JONES, Appellant,

v.

Leon L. WHITELEY, Independent Executor of the Estate of Mary M. Whiteley, Deceased, Appellee.

No. 17680.

Court of Civil Appeals of Texas, Fort Worth.

Feb. 13, 1976.

Rehearing Denied March 12, 1976.

Simon & Simon, and Henry W. Simon and Mike Liles, Fort Worth, for appellant.

A. J. Bryan, Fort Worth, for appellee.

## OPINION

SPURLOCK, Justice.

This is a will contest case. Patsy Jones appeals from the order of the Probate Court of Tarrant County admitting to probate as the last will of her mother, Mary Whiteley, the instrument offered by her stepfather, Leon Whiteley. This instrument was not "self-proved" and appellant maintains that appellee has not met his burden of showing it was properly executed.

We affirm.

The document in question is styled "Last Will and Testament", dated August 26, 1967, and was signed by Mary Whiteley as testatrix; it was also signed by Joe Villalobos and Fred Miller as attesting witnesses and notarized on the same date by Lorene Shivers. Mrs. Whiteley died on March 10, 1974.

Neither of the subscribing witnesses testified at the time of trial, but a deposition by Villalobos was introduced in which he claimed not to have signed the instrument in the presence of the testatrix and that the purported signature was not that of Mrs. Whiteley. Although there was some indication that Miller's deposition had been taken by contestant, neither party introduced it into evidence and there was testimony by his physician and daughter that he was eighty-four years old at the time of trial and at the time his deposition was taken had a badly failing memory. On the other hand, a Mrs. Lorene Thomas testified she was present, along with Mr. Whiteley, when the subscribing witnesses and Mrs. Whiteley executed the will, each in the presence of the others, and that Mr. Whiteley's will was executed at the same time. (At the time all of these people worked in a drugstore which was owned by the Whiteleys.)

Appellant's points of error one through eleven claim error by the trial court in allowing the proper execution of the instrument in question to be proved by secondary evidence in the form of testimony by a party who was allegedly present at the time the document was solemnized but who was not a subscribing witness. She maintains that the proponent has not met his burden

of proving the testatrix "executed the will with the formalities and solemnities . . required by law" since such evidence was not admissible to show the will was signed by the subscribing witnesses in her presence.

We overrule these points of error (1–11).

■ The Probate Code of our State provides, with certain exceptions not in point, that in order to be properly executed a will must be signed by the testator and two subscribing witnesses, the latter being required to sign in the testator's presence. Sec. 59, Tex.Prob.Code, Ann. (1956). While there is no requirement that the testator actually sign in the presence of the subscribing witnesses, it is mandatory that the witnesses sign in the presence of the testator. *Morgan v. Morgan,* 519 S.W.2d 276 (Tex.Civ.App., Austin, 1975, writ ref'd n. r. e.). The proponent of an attested written will which is not "self-proved" may establish its proper execution by the sworn testimony or affidavit of at least one of the subscribing witnesses thereto, taken in open court, assuming at least one such witness is available. Section 84(b), Prob.Code, supra. However, it has been held that the provision relating to proof of the will in court "only furnishes a guide under the conditions stated in the statute, and using the word 'may' is a recognition of other methods of proof and of other conditions under which that statute is not applicable."* *Massey v. Allen,* 248 S.W. 1067 at 1069 (Tex.Comm'n App., 1923, opinion adopted). The same case also observes that the statute setting out the proof necessary to probate a will (Art. 3271, the predecessor of the present Sec. 88 of the Probate Code), ". . . requires certain facts to be proved to the satisfaction of the court, showing, among other things, that the testator executed the will with the formality and solemnity required by the law to make it a valid will. There is no method designated in this article of making such proof, but it is only

required that it be done to the satisfaction of the court."

As to the degree which the court must rely on the testimony of subscribing witnesses where there is some question with regard to whether or not a testamentary instrument has been properly executed, the Supreme Court of Texas has stated: "If from defect of memory, or from corrupt purpose, subscribing witnesses should be unable or unwilling to testify to the facts bearing on the due execution of a will, this ought not to be permitted to defeat the will, if other evidence, admissible under the ordinary rules of law to establish facts, be introduced sufficient to satisfy the court 'that the testator executed the will with the formalities and solemnities and under the circumstances required by law to make a valid will.' Cases have arisen in which wills were admitted to probate when the positive testimony of the subscribing witnesses would have defeated this." *Hopf v. State,* 72 Tex. 281, 10 S.W. 589 (1888), cited in Sec. 3.10, Texas Estate Administration, p. 78 (State Bar of Texas, 1975); see also *Miller v. Miller,* 285 S.W.2d 373 (Eastland Tex.Civ. App., 1955, no writ hist.).

In the present case, the deposition of Villalobos was antagonistic to appellee's position in two ways: he admitted signing the will, but not in the presence of the testatrix; he maintained that the signature on the will was not that of the testatrix (based upon his having witnessed her signature on one other occasion).

There was, however, evidence which was contrary to Villalobos' recollection of those events. Mrs. Thomas and Mr. Eads, each of whom had known the Whiteleys for many years, testified that the signature on the will was that of Mrs. Whiteley. (Mr. Eads also testified that he had prepared reciprocal wills, including the one in question, for both Mr. and Mrs. Whiteley at the latter's request and according to her directions.)

---

* Quote refers to Art. 3267, Tex.Rev.Civ.Stat. (1911) which had similar language and on which the present Sec. 84 is based.

Since Villalobos' memory of the signature could have been inaccurate and given Mrs. Thomas' testimony that the will was signed by Mrs. Whiteley and the subscribing witnesses in the presence of one another, the trial court could also have concluded that Villalobos' recollection as to whether or not he signed in the presence of the testatrix was also inaccurate.

Miller did not testify; the record reflects that his deposition had been taken but was not introduced into evidence by either party. However, certain portions of the deposition appear in the record as part of the basis for the proponent's questioning of Miller's family physician, Dr. H. C. Thomas, as to Miller's capability for remembering the circumstances attendant to the execution of the will. These excerpts reflect: Miller could remember neither how old he was nor his home address; he could not recall recent phone conversations with the attorneys in the case; he recalled signing the instrument in question, but could not recall whether or not he signed it in the presence of the testatrix (although he refused to say he did not sign it in her presence). Miller's daughter, Marion Walker, testified that the signature of the subscribing witness, Fred Miller, was her father's, but that he had "lost his memory" as to recent events (which would have included the execution of the will).

In its findings of fact and conclusions of law, the trial court reflected its determination that: the testatrix signed the will in the presence of the subscribing witnesses, Villalobos and Miller; Villalobos and Miller signed the will in the presence of the testatrix; Fred Miller was not a competent witness at the time of trial; the deposition testimony of Villalobos was inaccurate; the testimony of Mrs. Thomas was accurate; the testimony of Mrs. Thomas, rather than that of Villalobos, was accepted as to compliance with the formalities required by law for valid execution of a will; the proponent sustained his burden of proving that the will was properly executed.

■ There was evidence from which the trial court could have concluded, as it did, that: Villalobos' recollection of the events in question was inaccurate, and Miller's testimony, if given, would have been inaccurate also and he was therefore not competent to testify. The facts of this particular case clearly fall within the purview of the cases previously noted which allow wills to be proved by secondary evidence in certain instances. There is sufficient evidence from which the trial court could have concluded that the will was executed with the requisite formalities; the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Worth Finance Co. v. Charlie Hillard Motor Co.,* 131 S.W.2d 416 (Tex.Civ.App., Fort Worth, 1939, no writ hist.); *Southland Life Ins. Co. v. Aetna Casualty & Surety Co.,* 366 S.W.2d 245 (Tex.Civ.App., Fort Worth, 1963, writ re'd, n. r. e.).

■ In addition to the foregoing, we note the rule that a full attestation clause reciting compliance with all formalities of execution and signed by the witness is prima facie evidence of the validity of the will, although the witness' memory is faulty, or he contradicts the facts stated in the clause, or where he is dead. The statements of the attestation clause may, however, be rebutted by proper evidence. *Wilson v. Paulus,* 15 S.W.2d 571 (Tex.Comm'n App., 1929, holding approved); *Nichols v. Rowan,* 422 S.W.2d 21 (Tex.Civ.App., San Antonio, 1967, writ ref'd, n. r. e.); *Seydler v. Baumgarten,* 294 S.W.2d 467 (Tex.Civ.App., Galveston, 1956, writ ref'd, n. r. e.).

In the present case, the attestation clause provided, "The above instrument was here and now published as her last will and signed by the said, Mary M. Whiteley, the testator, in our presence and we, at her request, in her presence and in the presence of each other, subscribed our names hereto as attesting witnesses." It was signed by Joe Villalobos and Fred Miller. As mentioned: Villalobos testified by deposition that he signed the instrument though he

denied doing so in Mrs. Whiteley's presence and maintained the signature of the testatrix not to be in Mrs. Whiteley's handwriting; Mrs. Thomas and Mr. Eads testified the signature of the testatrix was that of Mrs. Whiteley; the record reflects that Miller remembered signing the instrument, though not necessarily when or where; Miller's daughter identified the signature of Fred Miller after the attestation clause as being her father's. The rule discussed in the preceding paragraph clearly applies to the facts in this case.

■ The proponent having established prima facie that the will was properly executed, the burden of going forward with the evidence as to this element of proponent's case then shifted to the contestant and it became necessary for her to introduce evidence to the contrary. *Thornell v. Missouri State Life Ins. Co.,* 229 S.W. 653 (Tex.Civ.App., Texarkana, 1921, affirmed 249 S.W. 203, Tex. Comm'n App., 1923, opinion adopted); *Texas & Pacific Railway Company v. Moore,* 329 S.W.2d 293 (Tex. Civ.App., El Paso, 1959, ref'd, n. r. e.). When the proponent rested, the only "evidence" produced by contestant was the testimony of one of her counsel relative to whether or not an electronic photocopying machine would print out the notary seal on a notarized document which was being reproduced; such testimony had nothing to do with the formalities of execution. The only evidence in support of contestant's burden on this point was Villalobos' deposition testimony which has been recounted previously. Contestant did not attempt to introduce the testimony of Miller, nor does the record reflect any other probative evidence in her favor. The trial court therefore properly found the instrument to be a valid will executed in accordance with the requisite "formalities and solemnities".

We note that in her tenth and eleventh points of error, contestant contends there is no evidence in support of the trial court's finding/conclusion No. 4 that Fred Miller was an incompetent witness at the time of trial. She complains that no ruling was made or requested during the trial and therefore she was prejudiced by what amounted to an ex post facto ruling on Miller's competency. We disagree.

■ Even if proponent's prima facie case based on the attestation clause were not controlling, there is no requirement that a living subscribing witness who is otherwise available to testify be declared legally incompetent before secondary evidence can be introduced to prove up a will; rather, the law simply requires that the testimony of such a witness be properly accounted for in order to establish a basis for proving up the will in a manner other than that recommended by the statute. Section 84(b), supra; *Elnell v. Universalist General Convention,* 76 Tex. 514, 13 S.W. 552 (1890); *Jones v. Steinle,* 15 S.W.2d 164 (Tex.Civ.App., Austin, 1929, ref'd). The practical effect of the trial court's determination that Miller "was not a competent witness . . . at the time of trial" was to account for the absence of Miller's testimony based on the uncontradicted evidence of his faulty memory; it was not a determination that Miller would have been legally incompetent to testify had he been called.

By her twelfth and final point, appellant contends that the proponent has failed to meet his burden of proving the will was not revoked prior to the demise of the testatrix.

We overrule this point of error (No. 12).

■ In a will contest instituted prior to admission of the will to probate, the proponent has the burden of proving the will has not been revoked. Sec. 88(b)(3), Probate Code, supra; Section 4.27(8), Texas Estate Administration, supra. However, once it is proved that a will is otherwise valid and has been executed with the requisite formalities and solemnities, a rebuttable presumption of continuity is recognized and it is not necessary for the proponent to produce direct evidence of nonrevocation in the absence of evidence casting suspicion on its being the testator's last will, or tending to destroy the presumption. *McElroy v. Phink,* 97 Tex. 147, 76 S.W. 753 (1903);

*Wilson v. Paulus,* supra; *Farr v. Bell,* 460 S.W.2d 431 (Tex.Civ.App., Dallas, 1970, writ ref'd, n. r. e.).

In this case, not only was the presumption of continuity unrebutted, but there was evidence of nonrevocation as well: Mr. Whiteley testified that his wife had not revoked the will in question; Mr. Eads, the accountant, testified he had been taking care of the Whiteleys' business affairs for over 30 years, had prepared the reciprocal wills for them at Mrs. Whiteley's request, and that Mrs. Whiteley never asked him to prepare another will prior to her death. On the other hand, there is no evidence intimating that the will was every revoked.

Each point of error has been considered; each is overruled.

The judgment of the trial court is affirmed.