NUMBER 13-03-312-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

 

IN RE: THE ESTATE OF SADIE SHAMOON

 

 

 

                  On appeal from the 148th
District Court

                           of Nueces
County, Texas.

 

 

 

                     MEMORANDUM OPINION[1] 

 

                       Before
Justices Rodriguez, Castillo and Garza

                           Memorandum
Opinion by Justice Castillo

 








Appellee, Anthony Shamoon, filed an application to
probate the will of his mother, Sadie Shamoon. 
Appellant Naseph "Sammy" Shamoon filed a will contest and
appeals the trial court's order, following a jury trial, probating the
will.  By four issues, Sammy challenges
the legal and factual sufficiency of the evidence and admission of
evidence.  We affirm.

I.  BACKGROUND

A widow, Sadie, died of complications arising from
chronic obstructive pulmonary disease. 
Survived by her sons Ellis, Sammy, and Anthony, Sadie named as executor
and bequeathed the bulk of her estate to Anthony.  The evidence reflects that Anthony managed
Sadie's real property and, although he owned a home in the same city, stayed
with her and took care of her.  Anthony
called numerous witnesses to testify about the events central to Sadie's
execution of the will.[2]  

II. ISSUES PRESENTED

Sammy brings the following issues on appeal: 

Is the evidence legally sufficient (issue #1) and/or
factually sufficient (issue #2) to support the jury's answer to question No. 1,
that the will was executed with all requisite formalities to render it valid? 

 

Is the evidence legally or factual sufficient to
sustain the conclusion that Sadie either signed and/or proclaimed the document
as her last will and testament where subscribing witnesses did not see her sign
the will or hear her announce it as her will, and the only witness to the
signing is incompetent to testify as a matter of law (issue #3)?

 

Did the trial court err in admitting the incompetent
testimony of Anthony to establish Sadie's signing of the will (issue #4)?

 

III. 
SUFFICIENCY








By his first, second, and third issues, Sammy argues
that the evidence is legally and factually insufficient to support the jury's
answer to Question No. 1.[3]  Specifically, Sammy asserts that there is no
evidence that the two witnesses "attested" the will.  Anthony responds that the evidence is
sufficient to prove the will was properly executed.

A.  Legal
Sufficiency Standard of Review








We address legal‑sufficiency challenges as
either "no‑evidence" or "matter‑of‑law"
issues.  Gooch v. Am. Sling Co.,
902 S.W.2d 181, 183‑84 (Tex. App.BFort Worth 1995, no writ).  We analyze the issue as a "no‑evidence"
challenge when the party complaining on appeal did not bear the burden of proof
at trial.  Id.  Where the appellant did not bear the burden
of proof on the issue, he must show that the record presents no evidence to
support the adverse finding.  Croucher
v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). 


In performing a legal‑sufficiency review, we
consider only the probative evidence and inferences that support the challenged
finding, disregarding all evidence and inferences to the contrary.  Lenz v. Lenz, 79 S.W.3d 10, 19 (Tex.
2002).  We overrule a legal‑sufficiency
challenge if the record reflects any evidence of probative force to support the
finding.  ACS Investors, Inc. v.
McLaughlin, 943 S.W.2d 426, 430 (Tex. 1997). 








If more than a scintilla of evidence exists to
support the finding, the legal‑sufficiency challenge fails.  Formosa Plastics Corp. v. Presidio Eng'rs
& Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998).  The evidence is no more than a scintilla and,
in legal effect, is no evidence "[w]hen the evidence offered to prove a
vital fact is so weak as to do no more than create a mere surmise or suspicion
of its existence."  Kindred v.
Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983).  Suspicion linked to other suspicion produces
only more suspicion, not some evidence. 
Marathon Corp. v. Pitzner, 106 S.W.3d 724, 727 (Tex. 2003); Browning‑Ferris,
Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex. 1993).  Similarly, an inference stacked only on other
inferences is not legally sufficient evidence. 
Pitzner, 106 S.W.3d at 727. 
Conversely, more than a scintilla exists when the evidence "rises
to a level that would enable reasonable and fair‑minded people to differ
in their conclusions."  Transp.
Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994). 

When both legal and factual sufficiency challenges
are raised on appeal, the court must first examine the legal sufficiency of the
evidence.  See Glover v. Texas Gen.
Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981) (per curiam). 

B.  Factual
Sufficiency Standard of Review

When reviewing a jury verdict to determine the
factual sufficiency of the evidence, the party attacking a finding on which an
adverse party bore the burden of proof must show that the record presents
"insufficient evidence" to support the finding.  Gooch, 902 S.W.2d at 184.  We examine and consider all the
evidence.  Maritime Overseas Corp. v.
Ellis, 971 S.W.2d 402, 406‑07 (Tex. 1998).  We set aside the verdict only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  Pool v. Ford Motor Co.,
715 S.W.2d 629, 635 (Tex. 1986), overruled on other grounds, Crown Life Ins.
Co. v. Casteel, 22 S.W.3d 378, 388 (Tex. 2000).  If we reverse a trial court's judgment on
factual‑sufficiency grounds, we detail all of the evidence relevant to
the issue and articulate why the finding is factually insufficient.  Maritime Overseas Corp., 971 S.W.2d at
407.  We reverse and remand for a new
trial when we sustain a factual‑sufficiency point.  Glover, 619 S.W.2d at 401.  

C. Necessary Formalities and Solemnities








Sammy argues that the sworn testimony of the
subscribing witnesses did not constitute an adequate "witness" to the
execution of the will as required by the concept of "attestation,"
and there is insufficient evidence from other sources as to proper execution of
the will.  Thus, we must examine the
record to determine whether some evidence exists to support the finding in
issue, namely, that the two witnesses "attested" the instrument.  See Weirich v. Weirich, 833 S.W.2d 942,
945 (Tex.1992). 








Sammy argues that, because the will is not
self-proved, the evidence implicates the formalities and solemnities required
by the probate code as follows:  (1)
section 59(a), that the will be attested by two or more credible witnesses who
subscribe their names to the will in their own handwriting in the presence of
the testator, see Tex. Prob. Code
Ann. _ 59(a) (Vernon 2003);[4]
(2) section 84(b), that an attested will which is not self‑proved may be
proved up by the sworn testimony of one or more of the subscribing witnesses in
open court, see Tex. Prob. Code
Ann. ' 84(b) (Vernon Supp. 2004-05);[5]
and (3) section 88(b)(2), that the testator execute the will with the
formalities and solemnities and under the circumstances required by law to make
it a valid will, see Tex. Prob.
Code Ann. ' 88(b)(2) (Vernon 2003).[6]  

A.  The Law








The probate code provides, subject to certain
exceptions not in issue here, that to be properly executed, a will must be
signed by the testator and two subscribing witnesses, the latter being required
to sign in the testator's presence.  Tex. Prob. Code Ann. _ 59; see Jones v. Whiteley, 533 S.W.2d 881,
883 (Tex. App.BFort Worth 1976, writ ref'd n.r.e.).  While there is no requirement that the
testator actually sign in the presence of the subscribing witnesses, it is
mandatory that the witnesses sign in the presence of the testator.  Id. 
The proponent of an attested written will which is not self‑proved
may establish its proper execution by the sworn testimony or affidavit of at
least one of the subscribing witnesses thereto, taken in open court, assuming
at least one such witness is available.  Tex. Prob. Code Ann. _ 84(b); Jones, 533 S.W.2d at 883.  "However, it has been held that the
provision relating to proof of the will in court 'only furnishes a guide under
the conditions stated in the statute, and using the word 'may' is a recognition
of other methods of proof and of other conditions under which that statute is
not applicable.'"  Whiteley,
533 S.W.2d at 883 (citing Massey v. Allen, 248 S.W. 1067, 1069 (Tex.
Comm'n App. 1923, op. adopted)); see also Estate of Teal, 135 S.W.3d 87,
90-91 (Tex. App.BCorpus Christi 2002, no pet.) ("there is no
requirement that the testator sign the instrument in the presence of the
witnesses.").  Similarly, section 88
of the probate code requires certain facts to be proved to the satisfaction of
the court, showing, among other things, that the testator executed the will
with the formality and solemnity required by the law to make it a valid
will.  See Estate of Teal,
135 S.W.3d at 90-91.  No method is
designated in this article for the making of such proof; rather the articles
only require that it be done "to the satisfaction of the court."  Whiteley, 533 S.W.2d at 883.

            If, from defect of memory,
subscribing witnesses are unable to testify to the facts bearing on the due execution
of a will, "this ought not to be permitted to defeat the will, if other
evidence, admissible under the ordinary rules of law to establish facts, is
introduced sufficient to satisfy the court 'that the testator executed the will
with the formalities and solemnities and under the circumstances required by
law to make a valid will.'"  Whiteley,
533 S.W.2d at 883 (citing Hopf v. State, 10 S.W. 589, 592 (1888)).

B.  The Record








The title of the instrument admitted in evidence is
"Last Will and Testament of Sadie Shamoon."  The instrument consists of three pages.  It identifies Sadie's three sons, Ellis,
Sammy, and Anthony.  It bears a signature
of "Sadie Shamoon" on each of the three pages above a line with the
typewritten name "Sadie Shamoon." 
On the third page, the instrument has a handwritten date of June 15,
1999.  The third  page also includes two lines underneath the
designation "Witnesses."  The
signatures affixed on the lines legibly show "Gloria Morrison" and
"Elizabeth D. Moon."  

Sammy testified that the signature on the instrument
was Sadie's signature.  Sadie's long-time
friend, Victoria Brown, also testified that the signature on the will was
Sadie's signature.  Sadie's financial
accountant, Richard Guldin, testified that Sadie told him that she had a will
and that the will was "in order." 
Charles Cartwright, an attorney, testified that Sadie's son Ellis
retained him to prepare a draft of a will for discussion purposes.  He identified the instrument bearing Sadie's
and the witnesses' signatures, admitted in evidence, as the instrument he
drafted.  Cartwright testified that Sadie
was not his client.  He mailed the
instrument to her "to stimulate conversation and somebody looking into
doing a proper will for her."








The two witnesses who signed the instrument,
Elizabeth Moon and Gloria Morrison, testified at trial.  Moon testified that she worked as a volunteer
at the information desk at Bay Area Medical Center.  She had witnessed wills four or five times
over the several years she volunteered at the hospital.  Her impression was that hospital employees
were not allowed to witness wills. 
Consequently, volunteers were called upon to do so.  Moon identified Sadie's last will and
testament and the signatures on the instrument as her own and those of Sadie
and Morrison.  Moon testified she did not
remember whether Anthony or one of the admitting clerks asked Morrison and her
to witness Sadie's will.  Moon indicated
she would not have signed the will as a witness to the instrument if Sadie had
not already signed it or if Sadie was not conscious.  She explained that, as long as a person was
not unconscious, babbling, or under duress, she assumed the person was of sound
mind.  Moon recalled that, at the time,
Sadie was sitting at a desk with Moon and Morrison behind her.  Moon reached over Sadie to sign the
instrument.  

Moon further testified that she did not ask Sadie to
confirm Sadie's signature on the instrument, and she guessed the affixed
signature was Sadie's signature.  Moon
did not ask Sadie or Anthony or anyone else about Sadie's mental state or
capacity. Moon did not see Sadie sign the will but recalled that Sadie was
"bent over" the desk.  Moon did
not speak with Sadie at the time. 
Finally, Moon testified that the handwritten date on the instrument,
June 15, 1999, was not correct.  The
actual date of her signing was June 16, 1999. 









Gloria Morrison, also a hospital volunteer, did not
recall who summoned Moon and her to witness the will.  She heard Anthony asking or telling Sadie to
sign the will.  She described Anthony's
statement to Sadie as a "simple request."  A couple of minutes passed between Anthony's
statement and the time Morrison and Moon signed the instrument.  Morrison identified her signature and Moon's
signature on the will.  She did not
recall seeing Moon or Sadie sign the instrument nor the order of the three in
signing it.  Morrison also did not recall
speaking with Sadie.  Morrison admitted
she did not read the instrument line by line. 
However, Morrison testified she would not have signed the instrument
until Sadie signed it.  She believed
Sadie witnessed their signing the instrument because Moon and Morrison stood
next to Sadie to sign.  Morrison
testified she would not have signed the instrument had she seen something
indicating that Sadie was incompetent. 
She testified that the date of signing was June 16, 1999, because that
was the only day of the week she worked with Moon.

C. 
Sufficiency Analysis

Viewed in the light most favorable to the challenged
finding, the evidence establishes that a draft of a will for Sadie was prepared
for her at the request of her son, Ellis. 
The attorney-drafter of the instrument identified the instrument
admitted in evidence as the draft of a will he prepared and forwarded to
Sadie.  Sammy and Sadie's friend
identified the signature of the testator on the instrument as Sadie's
signature.  The same instrument bears the
signature of two witnesses.  The two
subscribing witnesses to the instrument, Moon and Morrison, testified at
trial.  They testified that they
subscribed their names to Sadie's will in their own handwriting and in the
presence of Sadie, the testator.  See
Tex. Prob. Code Ann. _ 59(a) (Vernon 2003) & _ 84(b) (Vernon Supp. 2004-05).  








Section 88(b)(2) of the probate code requires
certain facts to be proved to the satisfaction of the court, showing, among
other things not germaine to this appeal, that the testatrix executed the will
with the formality and solemnity required by the law to make it a valid
will.  Tex.
Prob. Code Ann. ' 88(b)(2) (Vernon 2003).  We conclude that the evidence is not so weak
as to do no more than create a mere surmise or suspicion that the instrument
Sadie executed was in fact her will, and that the subscribing witnesses duly
attested to it in Sadie's presence. 
Thus, we conclude that evidence of the complained-of necessary
formalities and solemnities required to make the instrument a valid will is
more than a scintilla.  Accordingly, we
conclude the evidence is legally sufficient. 
See Kindred, 650 S.W.2d at 63. 


Viewing all the evidence in the record, we cannot
conclude that the verdict is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. 
Ellis requested an attorney to draft a will for Sadie.  The attorney complied and forwarded the
instrument to Sadie.  Sadie signed the
instrument, titled "Last Will and Testament of Sadie Shamoon."  Two witnesses affixed their signatures to the
instrument.  Sadie told her financial
consultant she had a will and that it was in order.  On this record, we conclude that the evidence
is factually sufficient to sustain the jury's finding that Sadie executed her
will with the necessary formalities and solemnities to make it a valid
will.  See Maritime Overseas Corp.,
971 S.W.2d at 406-07.  

Accordingly, we overrule Sammy's first, second, and
third issues.

IV.  ADMISSION
OF EVIDENCE








By his fourth issue, Sammy argues that the trial
court abused its discretion in admitting Anthony's testimony regarding Sadie's
execution of the will.  He further argues
that the error probably caused the rendition of an improper jury verdict and
judgment.  

At trial, Sammy did not object to Anthony's
testimony.  In his motion for new trial,
Sammy asserted that Anthony was not a competent witness and his testimony
should not be considered in evaluating the sufficiency of the evidence to
support the jury's verdict.  However,
Sammy did not secure a ruling from the trial court.  The motion was overruled by operation of law.

As a prerequisite to presenting a complaint for
appellate review, the record must show that the complaint was made to the trial
court by a timely request, objection or motion and that the trial court ruled
on the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1),
33.1(a)(2)(A).  This Sammy did not do
so.  We conclude that he has not
preserved error.  








Even assuming that Sammy preserved error, we
conclude that he has not shown the complained-of harm.  To reverse a judgment based on error in the
admission or exclusion of evidence, an appellant must show that the trial
court's ruling was in error and that the error was calculated to cause and
probably did cause "the rendition of an improper judgment."  Tex.
R. App. P. 44.1; Owens‑Corning Fiberglass Corp. v. Malone,
972 S.W.2d 35, 43 (Tex. 1998).  Sammy has
not shown how Anthony's testimony caused "the rendition of an improper
judgment."  See Tex. R. App. P. 44.1.  Significantly, in our sufficiency review, we
excluded Anthony's testimony.  Sammy has
not shown how the result of the trial would have been different if Anthony had
not testified.  Accordingly, even if we
were to conclude that the trial court abused its discretion in admitting the
complained-of testimony and evidence, Sammy has not shown that the error was
calculated to cause or probably did cause "the rendition of an improper
judgment."  Tex. R. App. P. 44.1; see Ed Rachal Found. v.
D'Unger, 117 S.W.3d 348, 368 (Tex. App.BCorpus Christi 2003, pet. filed) (citing
Malone, 972 S.W.2d at 43).

Accordingly, we
overrule Sammy's fourth issue presented.

IV.  Conclusion

Having overruled the
four issues presented, we affirm.

 

 

ERRLINDA CASTILLO

Justice 

 

 

Memorandum Opinion delivered and filed this 

the 4th day of August, 2005.

 

 











[1] See Tex. R. App. P. 47.2, 47.4.





[2] A
will proponent has the burden of proof in the initial probate proceeding.  In re Estate of Flores, 76 S.W.3d 624,
629 (Tex. App.BCorpus
Christi 2002, no pet.).  





[3]
Question number one reads in its entirety as follows: 

 

Do
you find from a preponderance of the evidence that Sadie Shamoon executed the
Purported Will dated June 15, 1999, with all the formalities to make it a
lawful and valid will?

 

INSTRUCTION:  You are instructed that the formalities
required by law to make a will are as follows:

 

1.  The will must be in writing;
and

 

2.  The testator is 18 years of
age or older; and

 

3.  The testator must sign the
will in person, or the will must be signed by another person for the testator
in his or her presence and by his direction; and

 

4.  The will must be attested by
two or more credible witnesses above the age of 14 years who subscribe their
names to the will in their own handwriting in the presence of the testator.

 

With the respect to formality (4) above, you are instructed that a
witness is in the presence of the testator if the testator is able to see the
witness sign the will from the testator's actual position at the time, or from
a slightly altered position if the testator has the power readily to alter her
position without assistance.

 

Answer "We do" or "We do not"

 

ANSWER:  We do





[4]
Section 59 states in relevant part:

 

(a)  Every last will and testament, except where
otherwise provided by law, shall be in writing and signed by the testator in
person or by another person for him by his direction and in his presence, and
shall, if not wholly in the handwriting of the testator, be attested by two or
more credible witnesses above the age of fourteen years who shall subscribe
their names thereto in their own handwriting in the presence of the testator. .
. .

 

Tex. Prob. Code Ann. '
59(a) (Vernon 2003).  





[5]
Section 84 states in relevant part:

 

(b)
Attested Written Will.  If not self‑proved
as provided in this Code, an attested written will produced in court may be
proved:

 

(1)  By the sworn testimony or affidavit of one or
more of the subscribing witnesses thereto, taken in open court.

 

Tex. Prob. Code Ann. '
84(b) (Vernon Supp. 2004-05).  





[6]
Section 88(b)(2) states in relevant part: 

 

(b)
Additional Proof for Probate of Will.  To
obtain probate of a will, the applicant must also prove to the satisfaction of
the court:

 

(2)
If the will is not self-proved as provided by this Code, that the testator
executed the will with formalities and solemnities and under the circumstances
required by law to make a valid will[.]

 

Tex. Prob. Code Ann. _ 88(b)(2) (Vernon
2003).