**Mary Blanche MINGO, Appellant,**

**v.**

**William Johnson MINGO et al., Appellees.**

**No. 15265.**

Court of Civil Appeals of Texas,
San Antonio.

Feb. 27, 1974.

Rehearing Denied March 27, 1974.

————◆————

Roger W. Wooldridge, San Antonio, for appellant.

Stahl & Sohn, San Antonio, for appellees.

KLINGEMAN, Justice.

This is a suit by Mary Blanche Mingo, appellant here, to probate an unproduced written will of Maude Johnson. Miss Mingo is a sister of Maude Johnson; and appellees herein, William Johnson Mingo and U. S. Mingo, are brothers of Maude Johnson, and contested the probate of such will. In answer to the only special issue submitted, the jury found that the decedent, Maude Johnson, did not revoke the purported will during her lifetime. The trial court granted appellees' motion for judgment non obstante veredicto and entered judgment denying the probate of such will.

The instrument offered for probate is a conformed copy of a will dated September 24, 1953, which is not signed by the decedent or by any attesting witnesses. Such conformed copy was introduced into evidence. Under such will, all of her property was devised to Mary Blanche Mingo. It appears from the record that such instrument was executed with the formalities and solemnities required by law, and this does not appear to be a disputed issue. It is uncontroverted from the testimony that such instrument was last seen in the possession of the decedent, and that diligent search was made for such will after the death of the decedent, but that it was never found. The problem before us is not whether such will was properly executed, but whether such will was revoked.

Appellant, by five points of error, asserts that: (1) the court should not have granted appellees' motion for judgment non obstante veredicto because there was evidence of probative force to sustain the verdict of the jury on the only issue in controversy; (2) the court should not have found that a directed verdict would have been proper because the evidence raised an issue of fact as to whether or not the executed written will had been destroyed by the testatrix with the intention of revoking it; (3) the court should not have found there was no substantial evidence of probative force of a clear and convincing nature which overcame the presumption that the testatrix destroyed the will with the intention of revoking it; (4) the court should not have denied probate of the will in question, the only issue being resolved in favor of the appellant; and (5) the court erred in failing to grant the motion of appellant for judgment on the verdict of the jury, there being evidence having probative force upon which the jury could have made its finding.

■ The general and recognized rule is that where such will was in the possession of the testator or when he had ready access to it when last seen, failure to produce it after his death raises the presumption that the testator had destroyed it with an intention to revoke it, and the burden is cast upon the proponent to prove the contrary. McElroy v. Phink, 97 Tex. 147, 76 S.W. 753, 77 S.W. 1025 (1903); Citizens First National Bank of Tyler v. Rushing, 433 S.W.2d 741 (Tex.Civ.App.—Tyler 1968, no writ); Dodd v. Peoples National Bank, 377 S.W.2d 760 (Tex.Civ.App.—

Texarkana 1964, no writ); Tinney v. Carpenter, 369 S.W.2d 440, 443 (Tex.Civ.App. —Austin 1963, writ ref'd n. r. e.); Aschenbeck v. Aschenbeck, 62 S.W.2d 326 (Tex.Civ.App.—Austin 1933, writ dism'd); 61 Tex.Jur.2d Wills § 345.

A good statement of the rule is set forth in Bailey v. Bailey, 171 S.W.2d 162, 165 (Tex.Civ.App.—Amarillo 1943, no writ), where the Court said:

> "The law is well established in this State, as well as in almost every jurisdiction in this country, that in a proceeding to probate a will, where it is shown that it was executed by the decedent and when last seen or accounted for, it was in his possession or in a place to which he had ready access but after his death it can not be found, the presumption arises that the testator destroyed it in his lifetime with the intention of revoking it. The presumption that it was revoked by the testator stands in the place of positive proof to that effect and he who seeks to establish the will assumes the burden of overcoming the presumption by producing facts and circumstances contrary thereto or that it was fraudulently destroyed by some other person."

Maude Johnson died in San Antonio, Texas, on December 3, 1972, when she was eighty-four years of age. She was survived by three sisters and two brothers, all elderly.

A number of witnesses testified, but much of the testimony pertains to the period of time prior to the making of such will. There is testimony from several witnesses that the decedent stated on occasions that she desired to leave everything to appellant and that she had made a will leaving everything to appellant. This is not in dispute. The crucial issue is whether such will was revoked. It is undisputed that such will was last seen in the possession of Mrs. Johnson, and that after her death, such will could not be found or produced. Under the evidence of this case, appellant had the burden of rebutting and overcoming the presumption of revocation.

As is perhaps true in most cases of this type, there is a dearth of pertinent testimony bearing on revocation. The lawyer who prepared the will, George Kampmann, Esq., testified that he prepared a will for Mrs. Johnson in 1953; and that Proponent's Exhibit No. 5, which was introduced into evidence is a conformed copy of such will, with the dates and names of the testatrix and the witnesses typed in; and that such copy came from their files. He stated that he had made a diligent search of his office, but that he was unable to locate the original will; and that he did not know whether Maude revoked, cancelled or destroyed the will that was executed in his office.

Mrs. Pearlie Mae Sheppard testified that she was Maude Johnson's "play daughter"; that Maude and Blanche were close; that Maude always said she would leave everything to Blanche; that she was not there when Maude made the will but that she knew Maude made one; that Mrs. Johnson had a metal box at home in which she had a lot of papers, but that the will should have been in her deposit box in the Groos National Bank as Maude had told her that that was the best place to keep important papers; and that Maude wanted to make a will because her husband did not leave a will, and this had caused problems. She also testified that Maude's brother, Will, also liked Maude and came down and visited her often.

Willie May Sheppard Edmonson testified that Maude Johnson was her cousin; that she visited in her house often; that Mrs. Johnson had a black box at home in which she kept her will; that Maude Johnson showed her the will and said that she wanted Blanche to have everything; and that she showed her the will first in 1949 and again in 1964 or 1965, and that was the last time that she saw it. It is to be remembered that the instrument offered for probate was made in 1953.

Appellant testified that she had made a search for Mrs. Johnson's original signed will and had looked for it at Mrs. John-

son's safety box in the Groos National Bank and at the court house; and that it was not there, and that she doesn't know what happened to the will.

William Johnson Mingo testified that he was a brother of Maude Johnson. He testified in some detail as to the heirs of the decedent; that Maude's husband died in 1953, but that there were no children; and that eleven children were born to his father and mother of which Mary Blanche, U. S., Nealie, Sapphira and himself are still living. He stated that during the time he was at Maude's house, he never saw a will.

U. S. Mingo testified that he was a brother of Maude Johnson; that he was a minister and had been a minister for 65 years; that in May of 1967 he was appointed guardian of Maude Johnson and served in that capacity until August, 1968; that during such period of time Miss Mingo came to San Antonio from Fort Worth and helped take care of Mrs. Johnson; that she was paid $140 a month at first, which was later reduced to $80; that he gave up the guardianship in August of 1968, because he was sick; and that he never saw a paper or instrument which purported to be a will of Maude Johnson.

Mr. Noel Moss testified that he was a vice-president and cashier at the Groos National Bank and testified in some detail as to the lock box in the name of Mrs. Johnson. He testified that it was not possible for anyone to get into the lock box without it being shown on the entrance record. Copies of the records pertaining to such lock box were introduced into evidence. The signature cards in connection with such lock box show Mrs. Johnson's signature on several occasions. They also contain the signature of appellant on several occasions beginning in 1969. There are no signatures of appellees thereon, or of anyone else except as above shown. Such records show that the box was inventoried on December 21, 1972, shortly after Mrs. Johnson's death; and the contents are shown listing stock, savings bonds and a number of deeds, but there is no listing of any will.

There is testimony that Mrs. Johnson and Miss Mingo were close, but there is no testimony showing that there was any hostility between Mrs. Johnson and her other brothers and sisters.

■ The bulk of the testimony throws no light on the issue of revocation. Much of it pertains to the fact that Mrs. Johnson wanted to make a will and leave everything to Blanche. This was done in 1953, some nineteen years before her death. There is testimony that such will was last seen in 1964 or 1965 at which time it was in Mrs. Johnson's possession. There is no pertinent testimony covering the period of time from 1965 to the date of her death, a period of approximately seven years. There is nothing in the record to indicate what happened to the will during this period. There is no testimony to indicate that such will was fraudulently destroyed by some other person.

After carefully reviewing the entire record, it is our view that appellant did not present any substantial evidence of probative force necessary to overcome the presumption of revocation of the will by the decedent.

The judgment of the trial court is affirmed.