**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00345-CV**
_____

**IN THE ESTATE OF LESSIE MAE BURRELL**

**On Appeal from the 1st District Court**
**Jasper County, Texas**
**Trial Cause No. 33165**

## MEMORANDUM OPINION

The appellants, Chance Burnett, Clark Burrell, Phyllis Ingham, and Kelly Pender, challenge the trial court's order admitting a copy of Lessie Burrell's Last Will and Testament to probate. In three issues, the appellants challenge the legal and factual sufficiency of the evidence to support the trial court's order. We affirm the trial court's judgment.

## Background

On January 24, 1997, Lessie Burrell (the decedent) executed a will leaving Vada Burnett, her daughter, the sum of $1.00. She left the residue of her estate to Lessie Nance, the appellee herein, and the decedent's granddaughter, whom she

1

also named the Independent Executrix of the will. The decedent died on January 19, 2013 at the age of 93. At the time of her death, the decedent's four children had predeceased her, and she was survived by seven grandchildren. Because Nance could not locate the decedent's original will after she died, Nance filed an application to probate a copy of the decedent's will and alleged that the original will had been misplaced. The appellants, some of the decedent's grandchildren and one great-grandchild, filed an opposition to the probate of the copy of the decedent's will, alleging that prior to her death, the decedent revoked the will by physically destroying it.

After a hearing on Nance's application, the trial court signed an order admitting the copy of the will to probate and authorizing letters testamentary. The court found that Nance's allegations were true, that the decedent executed a will, and that the will was not produced in court because it had been lost or misplaced. The court found that the decedent did not revoke the will and that the will was entitled to be admitted to probate. Upon the appellants' request, the trial court also issued findings of fact and conclusions of law. Therein, the trial court specifically found that the decedent did not revoke the will, that Nance exercised reasonable diligence in attempting to produce the original will but was unable to do so because it had been lost or misplaced, and that the copy of the will offered for

2

probate was a true and correct copy of the decedent's original will executed in 1997. The appellants filed a motion for new trial, which was overruled by operation of law. Thereafter, the appellants filed a notice of appeal with this Court.

## Standard of Review

In an appeal from a judgment rendered after a bench trial, we will review the trial court's findings of fact for legal and factual sufficiency of the evidence using the same standards that are applied in reviewing a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When an appellant attacks the legal sufficiency of an adverse finding on an issue on which the appellant did not have the burden of proof, the appellant must demonstrate that no evidence supports the finding. *See Exxon Corp. v. Emerald Oil & Gas Co.,* 348 S.W.3d 194, 215 (Tex. 2011). The appellate court will sustain a legal sufficiency challenge if the record shows a complete absence of evidence of a vital fact, rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, the evidence offered to prove a vital fact is no more than a scintilla, or the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (quoting Robert W. Calvert, *"No Evidence" & "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362-63 (1960)). In a legal sufficiency review, we "must consider evidence in the light most favorable to

3

the verdict, and indulge every reasonable inference that would support it." *Id*. at 822. We will not substitute our judgment for that of the trier of fact as long as the evidence falls within the zone of reasonable disagreement. *Id*.

In evaluating a factual sufficiency (insufficient evidence) challenge, we consider and weigh all of the evidence, not just the evidence that supports the finding. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998). If the challenging party did not have the burden of proof at trial on the challenged finding, then we will "set aside the verdict only if the evidence that supports the finding is so weak as to make the verdict clearly wrong and manifestly unjust." *City of Austin v. Chandler*, 428 S.W.3d 398, 407 (Tex. App.—Austin 2014, no pet.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). The trial court is the sole judge of the witnesses' credibility in a bench trial, it may choose to credit or discredit one witness over another, and the appellate court may not impose its own opinion to the contrary. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Woods v. Woods*, 193 S.W.3d 720, 726 (Tex. App.—Beaumont 2006, pet. denied); *In re Estate of Jones*, 197 S.W.3d 894, 900 (Tex. App.—Beaumont 2006, pet. denied). We review a trial court's conclusions of law as a legal question. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

4

## Sufficiency of the Evidence

The appellants argue the evidence is legally and factually insufficient to support the trial court's order. Specifically, the appellants contend there was insufficient evidence to overcome the presumption that the decedent revoked her will and that unrebutted evidence shows that she physically destroyed the will prior to her death. The appellee contends that she has met her burden under the Texas Probate Code, which was in effect at the time she commenced her proceedings herein.[1] *See* Act of March 17, 1955, 54th Leg., R.S., ch. 55, § 85, 1955 Tex. Gen. Laws 88, 116-17, *amended by* Act of May 15, 2007, 80th Leg., R.S., ch. 1170, art. 6, 2007 Tex. Gen. Laws 4000, 4006, *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, 2009 Tex. Gen. Laws 1512, 1609-1610. Section 85 of the Texas Probate Code provides:

---

[1] Effective January 1, 2014, the Legislature repealed the Texas Probate Code and recodified it as the Texas Estates Code. *See* Act of May 26, 2009, 81st Leg., R.S., ch. 680, 2009 Tex. Gen. Laws 1512, 1512–1732 (§§ 10–12 reflect the effective date of the Texas Estates Code and the repeal of the Texas Probate Code), *amended by* Act of May 19, 2011, 82nd Leg., R.S., ch. 823, 2011 Tex. Sess. Law Serv. 1901, 1901–2095 (West); Act of May 9, 2013, 83rd Leg., R.S., ch. 161, art. 6, 2013 Tex. Sess. Law Serv. 623, 633–657 (West). Nance filed her application for probate of the will on April 19, 2013, before the effective date of the Legislature's revisions. *See* Act of May 24, 2013, 83rd Leg., R.S., ch. 1136, § 62(d), 2013 Tex. Sess. Law Serv. 2740, 2757 (West) (providing that the former law is continued for actions filed or otherwise commenced before January 1, 2014 for certain provisions of the Texas Estates Code, including the provision governing proof required for a will not produced in court).

A written will which cannot be produced in court shall be proved in the same manner as provided in the preceding Section for an attested written will or an holographic will, as the case may be, and the same amount and character of testimony shall be required to prove such will as is required to prove a written will produced in court; but, in addition thereto, the cause of its non-production must be proved, and such cause must be sufficient to satisfy the court that it cannot by any reasonable diligence be produced, and the contents of such will must be substantially proved by the testimony of a credible witness who has read the will, has heard the will read, or can identify a copy of the will.

*Id*. (hereinafter referred to as "Tex. Prob. Code § 85"). Section 85 requires that a proponent of a copy of a will satisfy the requirements of section 84 of the Texas Probate Code. *Id*. Section 84 provides different methods to prove an attested will that is physically produced in court, including that the sworn testimony or affidavit of one or more of the subscribing witnesses to a will may serve to prove the proper execution of the will. *See* Act of March 17, 1955, 54th Leg., R.S., ch. 55, 1955 Tex. Gen. Laws 88, 116 (repealed 2009) (hereinafter referred to as "Tex. Prob. Code § 84"). The third requirement of section 85 is that the proponent substantially proves the contents of the will by the testimony of a credible witness who has read the will, has heard the will read, or can identify a copy of the will. Tex. Prob. Code

§ 85. The parties do not contest that the copy of the will presented to the trial court was an actual copy of the decedent's will and that it was properly executed.[2]

The appellants do not directly challenge the second requirement of section 85, which specifies that the proponent of the copy of the will must prove the cause of the will's non-production and that such cause must be sufficient to satisfy the trial court that the will cannot by any reasonable diligence be produced. *See id*. § 85. However, by claiming that the will was not lost but rather destroyed, the appellants indirectly challenge this finding. The statute provides that the proponent of a will satisfies this burden by showing by a preponderance of the evidence that

---

[2] The subscribing witnesses to the decedent's will did not testify at the hearing. However, the record reflects that the attorney representing the parties opposing the will was also the attorney that prepared the will for the decedent, orchestrated its execution, and was designated in the will as the alternate executor. We further note that the will included a self-proving affidavit witnessed by the same people that witnessed the will. Under these circumstances, we hold there were sufficient facts to satisfy the court that the testator executed the will with the formalities and solemnities required by law to make the will valid. *See Jones v. Whiteley*, 533 S.W.2d 881, 883 (Tex. Civ. App.—Fort Worth 1976, writ ref'd n.r.e.); *see also Massey v. Allen*, 248 S.W. 1067, 1069 (Tex. Comm'n App. 1923, judgm't adopted) (interpreting predecessor of section 84 and holding that the provision relating to proof of the will in court "only furnishes a guide under the conditions stated in the statute" and that other methods of proof may, in some circumstances, be used); *Hopf v. State*, 10 S.W. 589, 592 (Tex. 1888) (providing that a defect in memory or a corrupt purpose preventing a subscribing witness from being unable to testify as to the facts bearing on the execution of the will should not be permitted to defeat the will if other admissible evidence establishes facts sufficient to satisfy the court that "the testator executed the will with the formalities and solemnities and under the circumstances required by law to make a valid will.")(internal quotation omitted).

the original will could not be located after a reasonably diligent search. *See id*. There is no requirement that the proponent establish the manner in which the original will was lost. *See In re Estate of Catlin*, 311 S.W.3d 697, 700-01 (Tex. App.—Amarillo 2010, pet. denied).

The trial court heard testimony that the decedent placed the will in a fireproof safe along with other legal papers and some old family photographs. Some of the appellants testified that they knew that the decedent had a will and knew that Nance was the only beneficiary under the will. The court heard testimony that the decedent was not in her home before her death, having spent time in a hospital and ultimately passing away in hospice care at a facility in another town. After the decedent's death, Nance found the fireproof safe at the decedent's house, but the safe had been left open and had been emptied. Nance testified that she was unable to locate any of the papers that she watched the decedent place in the safe and was unable to find the keys to the safe. Nance testified that she believed finding the safe in this condition was "unusual[.]" There are different inferences that could be drawn from the testimony and evidence, including that someone located the keys to the safe while the decedent was out of her home and emptied the contents of the safe, including the will.

The appellants argue that the will is missing not because someone removed it from the safe, but because the decedent destroyed it. The appellants specifically challenge the trial court's finding that the decedent did not revoke the will. They argue that the appellee has not met her burden under section 88 of the Texas Probate Code requiring her to prove that the decedent did not revoke the will, that there is a presumption that the decedent revoked the will, that the appellee has presented no evidence to overcome that presumption, and that the appellants presented uncontroverted proof that the decedent revoked the will by destroying it.

Section 88 of the Texas Probate Code provides that whenever an applicant seeks to probate a will, the applicant must prove to the satisfaction of the court a number of factors, including that the will was not revoked by the testator. *See* Act of March 17, 1955, 54th Leg., R.S., ch. 55, § 88, 1955 Tex. Gen. Laws 88, 117, *amended by* Act of May 22, 1969, 61st Leg., R.S., ch. 641, sec. 8, 1969 Tex. Gen. Laws 1922, 1925, *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, 2009 Tex. Gen. Laws 1512, 1608, 1617-1618 (hereinafter referred to as "Tex. Prob. Code § 88").[3] When an original will is lost but was last seen in the testator's

---

[3] As previously explained, the Legislature repealed and recodified the Texas Probate Code as the Texas Estates Code. The legislation enacting the Texas Estates Code provides expressly that it is intended as a recodification only and that no substantive changes in the law was intended. *See* Act of May 26, 2009, 81st Leg., ch. 680, § 1, 2009 Tex. Gen. Laws 1512, 1512.

9

possession, a rebuttable presumption arises that the testator destroyed the will with the intention of revoking it. *Brown v. Traylor*, 210 S.W.3d 648, 662 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *see McElroy v. Phink*, 76 S.W. 753, 753 (Tex. 1903) (explaining the proposition that "where a will which, when last seen, was in the custody of the testator, cannot be found after his death, a presumption arises that it has been revoked" because "it is a reasonable inference from the facts that the custodian, who in such case is the testator, has destroyed it for the purpose of revoking it"). The proponent of the copy of the will must overcome this presumption by a preponderance of the evidence. *In re Estate of Glover*, 744 S.W.2d 939, 940 (Tex. 1988) (per curiam). The proponent of the will can overcome the presumption by presenting evidence of circumstances contrary to the presumption or evidence that someone else fraudulently destroyed the will. *Brown*, 210 S.W.3d at 662; *see also In re Estate of Capps*, 154 S.W.3d 242, 245 (Tex. App.—Texarkana 2005, no pet.). "The testimony of a witness that, to her knowledge or belief, the testator did not revoke the will has been held sufficient evidence of nonrevocation to support probate of the will." *Capps*, 154 S.W.3d at 245.

Nance testified that the decedent lived on a 12-acre tract of land. In the late nineties, the decedent deeded Nance and her husband an acre of the property, so

they moved their house onto the property. Because of the decedent's age she needed help, so Nance, Nance's husband, and their daughter, Cassey, helped to care for the decedent. Nance estimated that she would see the decedent daily, sometimes two to three times a day. Nance testified that generally the decedent took care of her own business and was a meticulous bookkeeper, maintaining and organizing important documents. Nance recalled that in the last few years of the decedent's life, she would get confused to the point where she needed extra attention. Nance testified that two of the appellants, Burnett and Burrell, lived within five or six miles of the decedent but did not help with the decedent's care in her later years. Since the decedent's death, Nance has continued caring for the decedent's estate.

Nance recalled a time when the decedent wanted to sell her property. During the process of trying to sell the decedent's property, it was discovered that Nance's house sat on the decedent's property boundary line, which may have caused the potential buyer to opt out of purchasing the decedent's property. Nance denied that this situation caused any discord in her relationship with the decedent. She explained that she continued to live next door and care for the decedent. Nance testified that the decedent never told her that she revoked the will or otherwise burned or destroyed it.

Nance's daughter, Cassey, also testified. Cassey testified that she is the decedent's great-granddaughter. Up until the last three months of the decedent's life, Cassey helped care for the decedent on a daily basis for several years. She testified that her mother and father helped care for the decedent as well. Cassey corroborated her mother's testimony regarding the property boundary issue and testified that she was unaware of any kind of conflict or discord that developed between the decedent and Nance over it. Cassey testified that Nance never stopped assisting in the decedent's care and that the appellants did not help care for the decedent. Cassey testified that the decedent never told her she revoked or destroyed the will, and she had no reason to believe that had been done.

Nance's husband, David, testified that he helped maintain the decedent's property after her husband died and as the decedent aged. He testified that one of the appellants helped once or twice with some of the mowing over the years. David testified he had no knowledge that the decedent revoked or otherwise destroyed her will. David also denied that the boundary issue with the property caused any conflict or discord between Nance and the decedent.

The only person to testify that he knew of an act of revocation was the decedent's grandson, Burrell. Burrell recalled that when the decedent discovered that Nance's house crossed the decedent's property line, the decedent became

12

upset. Burrell testified that he accompanied the decedent to her attorney's office to discuss the encroachment. He testified that the decedent appeared quite angry at the attorney's office. Burrell testified that after the visit to the attorney's office, the decedent retrieved her will and then burned it while standing in her chicken yard. He explained that he drove up one day and the decedent was in the chicken yard, and he observed her light a match and burn a bunch of papers with a blue covering. Burrell testified that Audrey Mae Moss was with him. He testified that he told some of his family members what he had observed. It was his opinion that the decedent did not appear confused or unaware of what she was doing.

However, during cross-examination, Burrell admitted to making statements in his answers to interrogatories that conflicted with his testimony that the decedent revoked her will because she was mad about the property boundary issue. He stated in his answers to interrogatories that the decedent revoked her will because Nance "was not doing the things she promised [the decedent] that she would do in helping take care of her." He also admitted that in his answers to interrogatories, he stated that his wife, not Audrey Mae Moss, was present when the decedent burned the will.

There is testimony to support that Burrell had a troubled relationship with the decedent. Burrell testified that in the last two years of the decedent's life he

13

only spoke to her off and on, stating "we didn't talk." Nance testified that the decedent purchased furniture for Burrell and, at the time of her death, still owed $972 on the note. According to Nance, the decedent also co-signed a note to purchase a tractor for Burrell, but when Burrell stopped paying for the tractor, the decedent eventually let the tractor get repossessed because she could not continue to pay for it. Burrell explained that the decedent bought him furniture as a house warming gift, but he was unaware she was still paying on the debt. Regarding the tractor debt, Burrell contends the decedent took the tractor away from him because he missed one or two payments and sold it to someone else. Burrell recalled that the decedent paid the down payment on the tractor for him, but he claims that he repaid her.

Regarding Burrell's testimony that he saw the decedent burning her will, Burrell testified that he cannot read or write, and as such, admitted he did not actually read the papers he claimed he saw the defendant burn. Burrell admitted that he did not know for certain that the decedent was burning her will. He testified, "All I know is it was blue with a blue piece of paper around it with papers inside of it." Burnett, the decedent's grandson, testified that Burrell told him that the decedent had burned her will, but that he had no personal knowledge that the decedent destroyed her will. Lindsey, another granddaughter of the decedent,

14

testified that she did not go see the decedent. She recalled that Burrell told her that he saw the decedent burn the will, and she did not believe he would be dishonest in his testimony.

There is circumstantial evidence in this record to rebut the presumption of revocation of the decedent's will. The safe in the decedent's home was found open with all of its contents removed and the keys missing, after the decedent had been away from the home due to her illness for a length of time. *Compare Capps*, 154 S.W.3d at 244–46 (holding evidence sufficient to overcome presumption of revocation when original will was not found in the metal box in which decedent kept important documents, but decedent had given a copy of the will to the major devisees referenced in the will, had publicly announced her intentions regarding her property disposition, and continued to have affection for devisees named in the will, that she did not tell anyone a contrary intention regarding her disposition despite being the type of person who would have informed others if she revoked or changed her will), *with Mingo v. Mingo,* 507 S.W.2d 310, 312–13 (Tex. Civ. App.—San Antonio 1974, writ ref'd n.r.e.) (holding insufficient evidence to overcome the presumption of revocation when there was evidence that the will was kept in a bank safety deposit box with strict and recorded access and an inventory of the safety deposit box after decedent's death did not reveal will)

15

The trial court was free to disbelieve Burrell's testimony regarding the revocation of the will, especially in light of his inconsistent statements regarding the event. Moreover, the evidence is undisputed that Nance and her daughter were the decedent's main caregivers. The evidence also shows that Nance and the decedent continued to have a good, loving relationship up until the decedent's death. Nance testified that the decedent never told her that she revoked the will or otherwise burned or destroyed it.

Viewing the evidence in the light most favorable to the trial court's findings and indulging every reasonable inference that would support them, we conclude that the trial court could have reasonably concluded that the decedent did not revoke her will. *See In re Estate of Perez*, 324 S.W.3d 257, 261-62 (Tex. App.—El Paso 2010, no pet.). Weighing all the evidence, we conclude the evidence supporting the trial court's finding that the decedent did not revoke her will is not so weak as to be clearly wrong or manifestly unjust. *See City of Austin v. Chandler*, 428 S.W.3d 398, 407 (Tex. App.—Austin 2014, no pet.). We conclude the evidence is legally and factually sufficient to support the trial court's finding that the decedent did not revoke her will. Accordingly, we overrule the appellants' three issues and affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on July 31, 2015
Opinion Delivered September 22, 2016

Before McKeithen, C.J., Kreger and Horton, JJ.

17